UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT M.,

    Plaintiff,

v.

ANDREW SAUL,

    Defendant.

Case No. 20-cv-03481-JSC

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 20, 23

Plaintiff seeks social security benefits for a combination of physical and mental impairments, including: degenerative disc disease in his back, degenerative joint disease in his left knee, arthritis, hypertension, hepatitis C, history of cerebrovascular accident, seizure disorder, short and long term memory loss, depression, anxiety, insomnia, and bipolar disorder. (Administrative Record ("AR") 221-22, 225, 433, 500.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his benefits claim. Now before the Court are Plaintiff's and Defendant's motions for summary judgment.[1] (Dkt. Nos. 20 and 23.) After careful consideration of the parties' briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings. Because the ALJ erred in her adverse credibility finding of Plaintiff, but there are outstanding issues to be resolved before a disability determination can be made, remand for further proceedings is proper.

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 11 and 12.)

# BACKGROUND

**A. Procedural History**

Plaintiff filed an application for supplemental security income benefits under Title XVI of the Social Security Act (the "Act") on January 27, 2017, alleging a disability onset of June 1, 2016. (AR 16, 283, 406-13.) His application was denied both initially and upon reconsideration. (AR 288-93, 297-302.) Plaintiff then submitted a request for a hearing before an Administrative Law Judge ("ALJ") and his hearing was held before Judge Wynne O'Brien-Persons on June 11, 2019. (AR 215-37, 303.) On July 2, 2019, the ALJ issued a decision finding Plaintiff is not disabled. (AR 13-31.) The ALJ found that Plaintiff has severe impairments of bipolar disorder, degenerative disc disease, left shoulder arthrosis, hypertension, and bilateral knee pain, but that he does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (AR 19-21.) The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") for less than the full range of light work. (AR 21.) The ALJ concluded that Plaintiff is not disabled because he can perform jobs existing in significant numbers in the national economy. (AR 25-26.)

Plaintiff then filed a request for a review of the ALJ's decision, which the Appeals Council denied. (AR 2-7, 403-05.) Plaintiff then sought review in this court. (Dkt. No. 1.) In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment. (Dkt. Nos. 20 and 23.)

**B. Issues for Review**

1. Did the ALJ err in her application of the Medical-Vocational Guidelines at Step Five?

2. Did the ALJ err in the number of jobs identified at Step Five?

3. Did the ALJ err in evaluating Plaintiff's credibility?

4. Did the ALJ err in finding a physician's assistant was not an acceptable medical source?

5. Did the ALJ err in assessing Plaintiff's mental limitations?

6. Should the Court remand for payment of benefits or further proceedings?

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," ("RFC") the claimant can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *see* 20 C.F.R. § 416.920(a).

**DISCUSSION**

**A. The ALJ's Medical-Vocational Guidelines Determination**

At step five of the sequential evaluation process, the ALJ must determine if the claimant is able to adjust to other work. *See* 20 C.F.R. § 416.920(a)(4)(v). In making this determination, it is sometimes appropriate for the ALJ to consider the Medical-Vocational Guidelines located at 20 C.F.R. Part 404, Subpart P, Appendix 2. *Tackett*, 180 F.3d at 1101 (internal citations omitted). These Guidelines, commonly referred to as "the grids," "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Id.* (emphasis omitted). The grids consist of three separate tables: one for claimants limited to being able to perform the full range of sedentary work, one for claimants limited to the full range of light

work, and one for claimants limited to the full range of medium work. *Id.* Within each table, an ALJ can find the appropriate row that matches a claimant's age, education, and previous work experience, and that row will direct a finding of either "disabled" or "not disabled." *Id.* If the grids direct a finding of disability, the ALJ must find the claimant disabled. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115-16 (9th Cir. 2006) (internal citations omitted). Likewise, if the grids capture all of a claimant's limitations and the grids mandate a finding of "not disabled," the ALJ must find the claimant is not disabled. *Tackett*, 180 F.3d at 1102 (internal citations omitted). However, if the grids would mandate a finding of "not disabled," but the claimant has additional limitations not captured by the grids, then the grids are not determinative of disability, and the ALJ must consult a vocational expert to determine if sufficient jobs exist in the national economy that the claimant can perform, given the claimant's RFC, age, education, and previous work experience. *Id.*

Here, the ALJ found Plaintiff capable of light work with additional limitations. (AR 21.) The ALJ also found that Plaintiff was an individual "closely approaching advanced age" with limited education, an ability to communicate in English, and no transferable skills. (AR 25.) The ALJ therefore correctly identified Medical-Vocational Rule 202.10 as the applicable rule from the grids. (AR 26); 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Rule 202.10. The ALJ correctly found that Rule 202.10 would mandate a finding of "not disabled" except Plaintiff is not able to perform all or substantially all of the requirements of light work, due to the additional limitations in Plaintiff's RFC. (AR 26); 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Rule 202.10. The ALJ therefore correctly determined that the grids do not resolve whether Plaintiff is disabled and consulted a vocational expert as to whether sufficient jobs exist in the national economy that Plaintiff can perform. (AR 26.)

Plaintiff argues that the ALJ erred in not finding him disabled under the grids, but his argument is very hard to follow.[2] Plaintiff's motion first appears to assert that the ALJ erred by

---

[2] In fact, this argument, like much of Plaintiff's briefs, borders on incoherent. The briefs also appear to have the wrong words or are missing words in places and often do not use appropriate formatting, punctuation, quotation marks, or legal citation, making it difficult to tell what portions of the briefs are quoting or paraphrasing cases, and what portions are merely argument. Some of

4

not applying the grids at all, but this is not true. (*See* AR 25-26.) Plaintiff's motion also asserts, at various points, that the ALJ erred by not applying Medical-Vocational Rule 202.10 and Rules 203.18-203.24. All of these Rules would lead to a finding of "not disabled" and the ALJ did, in fact, apply Rule 202.10. (AR 26); 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Rules 202.10, 203.18-203.24. In addition, Rules 203.18-203.24, are clearly inapplicable, as they apply to claimants who can perform the full range of medium work and the ALJ found Plaintiff could perform light work with additional limitations. 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Rules 203.18-203.24.

After the Commissioner pointed out that all of Plaintiff's cited rules lead to a conclusion of "not disabled," Plaintiff claimed in his reply brief that this was a clerical error and he intended to cite Rule 201.10. While Rule 201.10 does mandate a finding of "disabled," it is inapplicable here because it applies to individuals who are limited to performing the full range of sedentary work, whereas the ALJ found Plaintiff could perform light work with additional limitations. (AR 21); 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Rule 201.10. Plaintiff's arguments are therefore without merit.

**B. The ALJ's Identification of Jobs Plaintiff Can Perform**

Once an ALJ has determined in step five that the grids do not resolve the question of a claimant's disability, the ALJ then must determine whether the claimant can adjust to other work. 20 C.F.R. § 416.920(a)(4)(v). In order to find that a claimant can adjust to other work, the ALJ must provide evidence that other work that the claimant can do exists "in significant numbers in the national economy." 20 C.F.R. § 416.960(c).

Here, relying on the testimony of a vocational expert, the ALJ found that sufficient jobs exist in the national economy because Plaintiff can perform the jobs of assembler, small parts and folder shirts, laundry, with a combined total of 32,000 jobs available in the national economy,

---

the legal arguments presented in the briefs also have basic legal or logical errors or are not developed at all. The Court is aware that Plaintiff's counsel, Josephine Gerrard, has submitted other similarly deficient briefs in other cases before other judges in this District, and has been warned that these briefs do not meet the standards expected of licensed attorneys practicing before this District, but those warnings were given after counsel filed the briefs at issue in this case. *See, e.g.*, *I.R. v. Saul*, No. 3:19-cv-05934-JCS, 2021 WL 1056633, at *6 n.7 (N.D. Cal. Mar. 19, 2021); *David B. v. Saul*, No. 4:20-cv-01243-KAW, (Dkt. No. 23), at 4 n.1 (N.D. Cal. April 15, 2021). Counsel is again admonished that future briefs (i.e. those filed after counsel received her first admonishment) resembling those submitted here may result in a referral to the Court's Standing Committee on Professional Conduct.

when taking Plaintiff's specific limitations into account. (AR 26.) Plaintiff does not argue that 32,000 jobs is an insufficient number, but instead argues that the ALJ failed to meet her burden because she identified only two distinct occupations.

Plaintiff's argument is based entirely on an inapposite legal standard and legal authority. Plaintiff cites case law stating that two different occupations do not constitute a "sufficient range of work." *See Maxwell v. Saul*, 971 F.3d 1128, 1132 (9th Cir. 2020); *Lounsburry*, 468 F.3d at 1117. But the "sufficient range of work" standard does not apply here. That standard only applies in determining whether a claimant is disabled under Medical-Vocational Rule 202.00(c). *See Maxwell*, 971 F.3d at 1132 ("We hold that the identification of two occupations is insufficient to satisfy the 'significant range of work' requirement of Rule 202.00(c)."); *Lounsburry*, 468 F.3d at 1117 (alterations in original) ("We thus construe the phrase 'significant range of . . . work' in Rule 202.00(c) to require a significant number of occupations."). Under Rule 202.00(c), an individual of "advanced age," who only has "skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity" is considered disabled. 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Rule 202.00(c). Rule 202.00(c) does not apply to Plaintiff, because Plaintiff is not an individual of "advanced age." (AR 25.) So the authority regarding how many occupations constitute a "significant range of work" is irrelevant and Plaintiff cites no authority suggesting that two occupations is insufficient to satisfy the applicable "significant numbers in the national economy" standard. 20 C.F.R. § 416.960(c). Accordingly, this argument is also without merit.

**C. The ALJ's Determination of Plaintiff's Credibility**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citations and quotation marks omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her

symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal citations and quotation marks omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citations omitted).

Plaintiff testified that he suffers from both physical and mental impairments that prevent him from working. Physically, he testified that he has back and knee pain every day that forces him to walk with a cane, and even with a cane he can only walk about a quarter of a mile, with three or four stops, can only stand for five to 10 minutes at a time, can only sit for 30 minutes at a time, and can only carry five to 10 pounds at a time. (AR 221-26.) Mentally, he testified that he has short and long term memory loss and bipolar disorder, which causes him to lose his temper easily and makes him unable to be around a lot of people if he does not take his medication. (AR 220-21, 225.) Plaintiff also testified that his bipolar medication makes him sleepy and he has to take a three to four hour nap every other day. (AR 225.)

Applying the two-step analysis, the ALJ first determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 22.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of his symptoms, or else find evidence of malingering. *Lingenfelter*, 504 F.3d at 1036. The ALJ found no evidence of malingering, but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 22.) The ALJ provided six reasons for this conclusion: (1) Plaintiff's symptom testimony was not supported by the objective medical evidence in the record; (2) the treatment Plaintiff received was "essentially routine and/or conservative in nature"; (3) Plaintiff stated in September 2018 that his pain was under control; (4) the medical record failed to show that Plaintiff's use of a walker was prescribed and medically necessary; (5) Plaintiff presented as not being in acute distress at many of his doctor's

7

appointments; and (6) Plaintiff worked only sporadically prior to the alleged disability onset date. (AR 22-24.) None of these reasons meets the "specific, clear and convincing" standard.[3]

First, a lack of objective medical evidence to fully corroborate the severity of a claimant's symptoms is an insufficient basis, standing alone, to reject the claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (internal citations omitted). Furthermore, although the ALJ listed several physical and mental examinations that she claimed undermined Plaintiff's testimony, she did not explain which of these findings contradicted which parts of Plaintiff's testimony or why. (AR 22-24); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (internal citations omitted) ("It's not sufficient for the ALJ to make only general findings; he must state which [symptom] testimony is not credible and what evidence suggests the complaints are not credible.").

The ALJ did note that the objective medical evidence "did not note the need to lie down regularly and inability to lift over 10 pounds." (AR 24.) But Plaintiff did not testify that he needed to lie down regularly. The statement about needing to lie down regularly was a statement by Plaintiff's attorney in a pre-hearing brief about what the attorney expected Plaintiff to testify to. (AR 500.) At the hearing, when asked about his need to lie down, Plaintiff simply said that he takes one nap every other day. (AR 225.) Whether the objective medical evidence supports a need to lie down regularly is therefore irrelevant. In addition, the objective exams cited by the ALJ do not include any testing of lifting capacity, so there is no reason that these exams would note an inability to lift over 10 pounds. (AR 24, 636-37, 642, 645, 649, 654, 664, 684, 696, 698.)

Second, conservative medical treatment can only be used as a basis for discounting a claimant's testimony where the ALJ identifies the more aggressive treatment options that were

---

[3] Plaintiff's motion describes the "specific, clear and convincing" legal standard and states that the ALJ failed to provide clear and convincing reasons, but provides no analysis supporting this conclusion. The Commissioner argues that Plaintiff has therefore forfeited this argument. Plaintiff's argument here is severely deficient, and Plaintiff's counsel has done her client a disservice in not developing this argument. Nevertheless, this case differs from the authority cited by the Commissioner in that, despite Plaintiff's counsel's failings, the process of comparing the reasons given by the ALJ to the standard cited by Plaintiff is a simple one that does not require guesswork by the Court. Likewise, despite Plaintiff's counsel's deficient briefing, the Commissioner understood what was at issue and was able to devote over one-third of the argument section of his brief to this issue. Plaintiff's argument is not forfeited.

8

available and appropriate and considers the reasons the claimant did not pursue more aggressive treatment. *Cortes v. Colvin*, No. 2:15-CV-2277 (GJS), 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016) (internal citations and quotation marks omitted) ("[A]n ALJ errs in relying on conservative treatment if the record does not reflect that more aggressive treatment options are appropriate or available."); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (internal citations and quotation marks omitted) ("[A]n adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."). The ALJ cited the lack of "recommendations for additional surgery or treatment for orthopedic specialist care" and the absence of "pain management specialist treatment" as reasons Plaintiff's physical treatments were conservative. (AR 23-24.) These statements are not supported by substantial evidence in the record. Plaintiff was referred to a pain management specialist, an orthopedic specialist, and a surgeon and the recommendation from these specialists was that Plaintiff should receive various types of injections and ablations, which Plaintiff did. (AR 559, 573, 695, 1322-23, 1341, 1345, 1350, 1355, 1358, 1367-68.)

As for Plaintiff's mental health treatment, the ALJ stated that Plaintiff had "limited mental health treatment with no regular treatment in 2018 and 2019." (AR 24.) Again, this statement is not supported by substantial evidence in the record. Plaintiff received mental health treatment from his primary care provider, Joseph Geare, P.A., throughout 2018 and 2019, as evidenced by the numerous treatment notes discussing Plaintiff's mental health problems, progress, and medications. (AR 644, 647, 648, 651, 653, 655, 669, 672, 673, 677, 680, 682, 686, 688, 691, 698.)

Third, the ALJ cited a single statement in September 2018 that Plaintiff's back pain was under control with his current medications. (AR 23, 663.) But at numerous appointments both before and after this appointment Plaintiff said his pain was not under control. (*See, e.g.*, AR 655 ("Back pain continues."), 657 ("His back pain is worse today."), 660 ("Back pain is much worse."), 666 ("[I]ncreased mid to lower back pain . . . had to leave by wheelchair due to leg

9

weakness and pain."), 669 ("[U]nable to stand because of back pain and leg weakness."), 671 ("S[e]vere low back pain continues."), 673 ("Pain is keeping him awake at night."), 675 ("In significant pain."), 677 ("[H]is lower back and sciatica pain continue."), 684 ("Neck, back, hip and knee pain continue."), 686 ("Both knees are painful . . . Back and neck pain continue."), 691 ("[H]aving shooting pain from the base of his neck to his skull."). The ALJ's cherry-picked single instance of Plaintiff's pain being under control is not a "specific, clear and convincing" reason to discount Plaintiff's pain testimony, given these other numerous instances where his pain was not under control. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) ("We conclude that the ALJ's specific reason for rejecting Dr. Hsieh's medical opinion is not supported by substantial evidence. In concluding that the most recent medical evidence indicates that Holohan was improving, the ALJ selectively relied on some entries in Holohan's records from San Francisco General Hospital and ignored the many others that indicated continued, severe impairment."); *Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) (internal citations omitted) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination.").

Fourth, the ALJ found that the record failed to show that Plaintiff's use of a walker was prescribed and medically necessary. (AR 24.) Plaintiff used a walker after a fall in September 2018, although he had stopped using the walker by the time of the June 2019 hearing. (AR 223, 666, 671-72.) While the medical records do not explicitly state that the walker was necessary, the records show that Plaintiff's primary care provider was aware that Plaintiff was using a walker and appeared to uncritically accept Plaintiff's statements regarding his loss of mobility after the fall. (AR 666 ("[H]ad to leave by wheelchair due to leg weakness and pain."), 669 ("[I]n wheelchair – unable to stand because of back pain and leg weakness."), 671 ("[A]ble to ambulate using a walker."), 672 ("[A]ssistive Device: walker."), 673 ("Unable to move without assistance."), 675 ("Walking with a walker.").) Nothing in these records indicates that Plaintiff's primary care provider did not think the walker was medically necessary. In addition, since Plaintiff testified that he no longer uses the walker, (AR 223), even if the walker was not medically necessary, this

would not be a "specific, clear and convincing" reason to discount Plaintiff's testimony about his current limitations.

Fifth, the ALJ cited several instances where Plaintiff's primary care provider noted that Plaintiff did not appear to be in any acute distress. (AR 24, 636-37, 642, 645, 649, 654, 664, 684, 696, 698.) The ALJ did not mention, however, that at many other appointments Plaintiff's primary care provider noted that Plaintiff *did* appear to be in acute distress. (*See, e.g.*, AR 613 ("[E]vidence of Distesss: in distress secondary to pain."), 622 (same), 625 (same), 628 (same), 640 ("[E]vidence of Distesss: anxious."), 658 ("[E]vidence of Distesss: in distress secondary to pain."), 661 (same), 667 ("[E]vidence of Distress: in distress secondary to pain and anxious."), 669 (same), 672 (same), 673 (same), 675 (same), 677 ("[E]vidence of Distesss: agitated and anxious."), 686 ("[E]vidence of Distesss: in distress secondary to pain.") (emphasis omitted).) Once again, these cherry-picked positive statements are not a "specific, clear and convincing" reason to discount Plaintiff's testimony, in light of the numerous negative statements also in the records. *See Holohan*, 246 F.3d at 1207; *Williams*, 2015 WL 4507174, at *6.

Sixth, the ALJ noted that Plaintiff only worked sporadically prior to his alleged onset date. (AR 24.) This is true, (AR 427, 435), and sporadic work history is a relevant consideration in evaluating a Plaintiff's credibility. *Thomas*, 278 F.3d at 959. But there is no inconsistency between this fact and Plaintiff's testimony, as Plaintiff frankly disclosed that he stopped working both because of his conditions and for other reasons. (AR 434.) In addition, the Court has found all of the ALJ's other reasons for discounting Plaintiff's testimony legally insufficient. The Court is not aware of any authority, and the Commissioner has not cited any, finding sporadic work history, standing alone, sufficient to discount the entirety of Plaintiff's testimony. *Cf. Thomas*, 278 F.3d at 959 (upholding adverse credibility determination based on lack of medical evidence, poor work history, ability to perform household chores, inconsistent statements about alcohol and drug use, and failure to give maximum effort on physical testing); *Klick v. Saul*, 820 F. App'x 656, 657 (9th Cir. 2020) (the medical record, lack of follow-through in treatment and sporadic work record); *Howes v. Berryhill*, 676 F. App'x 644, 644-45 (9th Cir. 2017) (favorable response to conservative treatment, unexplained gaps in treatment, poor effort during medical exams,

11

inconsistencies in reporting of limitations and daily activities, and sporadic work history); *Deck v. Colvin*, 588 F. App'x 747, 748 (9th Cir. 2014) (inconsistency with daily activities, inconsistency with objective medical evidence, sporadic work history, failure to follow up on medical referrals, and continued drug use). Nor does the Commissioner in his brief even argue that Plaintiff's sporadic work history supports the ALJ's credibility determination. In the absence of other legally sufficient reasons to discount Plaintiff's symptoms, Plaintiff's sporadic work history alone does not rise to the level of a "specific, clear and convincing" reason to discount Plaintiff's testimony. The ALJ therefore did not provide any "specific, clear and convincing" reasons to discount Plaintiff's testimony and the ALJ's adverse credibility finding was in error.

**D. The ALJ's Acceptable Medical Source Determination**

Normally, the medical opinion of a medical provider who treats a claimant is entitled to more weight than the opinions of medical providers who do not treat the claimant. *Orn*, 495 F.3d at 631 (internal citations omitted); 20 C.F.R. § 416.927(c)(2). However, this is only true if the medical provider is considered an "acceptable medical source" under the relevant regulations. *See* 20 C.F.R. § 416.927(a)(2). Otherwise, the medical provider's opinion is not given the same deference and can be rejected by the ALJ based on reasons "germane" to that provider. *Molina*, 674 F.3d at 1111 (internal citations omitted).

Plaintiff received treatment from Joseph Geare, a physician's assistant, starting in 2016. (AR 1331, 1335.) In April 2019, Mr. Geare completed a Physical Residual Functional Capacity Questionnaire about Plaintiff's limitations. (AR 1331-35.) The ALJ gave this opinion "little weight," in part because she found that Mr. Geare is not an "acceptable medical source." (AR 24-25.) Plaintiff argues that this was an error and cites an online guide created by the Social Security Administration for health professionals, which states that a physician's assistant is an acceptable medical source within his or her licensed scope of practice. *See* Social Security Administration, *Consultative Examinations: A Guide for Health Professionals* (April 2014), https://www.ssa.gov/disability/professionals/greenbook/ce-evidence.htm. As the Commissioner points out, however, the regulation on which this guide is based explicitly states that physician's assistants can only be considered acceptable medical sources for claims filed after March 27,

12

2017. 20 C.F.R.§ 416.902(a)(8). Plaintiff's application was filed prior to March 27, 2017, so for purposes of Plaintiff's application, a physician's assistant is not considered an acceptable medical source. (AR 16, 283, 406-13); 20 C.F.R.§ 416.902(a)(8); *Molina*, 674 F.3d at 1111. Plaintiff's argument therefore fails.

### E. The ALJ's Consideration of Plaintiff's Mental Limitations

The Social Security Administration has supplemented the five-step general disability evaluation process with a specific procedure governing the evaluation of mental impairments. *See generally* 20 C.F.R. § 416.920a. First, the ALJ must determine whether the claimant has a medically determinable mental impairment. *Id.* § 416.920a(b)(1). Next, the ALJ must assess the degree of functional limitation resulting from the claimant's mental impairment with respect to the following functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* §§ 416.920a(b)(2), (c)(3). The ALJ must evaluate these four areas on a five-point scale: none, mild, moderate, marked, or extreme. *Id.* § 416.920a(c)(4). Finally, the ALJ must determine the severity of the claimant's mental impairment and whether that severity meets or equals the severity of a mental impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.920a(d)(2). In order to meet the severity of any listed impairment, the claimant must satisfy the "Paragraph B criteria," which requires that a claimant's mental disorder "result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 12.00(A)(2)(b). If the ALJ determines that the severity of the claimant's mental impairment meets or equals the severity of a listed mental impairment, the claimant is disabled. *See* 20 C.F.R. § 416.920(a)(4)(iii). Otherwise, the evaluation proceeds to step four of the general disability inquiry, where the ALJ must determine the Plaintiff's mental RFC. *See id.* § 416.920a(d)(3); Social Security Ruling 96-8p, 1996 WL 374184, at *4 (S.S.A. 1996).

The ALJ followed this procedure. First, the ALJ found that Plaintiff had a severe mental impairment of bipolar disorder. (AR 19.) Next the ALJ evaluated Plaintiff's functional limitations in (1) understanding, remembering, or applying information; (2) interacting with

13

others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (AR 20-21.) The ALJ found that Plaintiff had a mild limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or managing himself. (AR 20-21.) Because the ALJ did not find extreme limitations in any of these categories or marked limitations in two of these categories, she concluded that the "paragraph B" criteria was not satisfied and therefore Plaintiff does not have a mental impairment that meets or equals in severity any listed impairment. (AR 21.) The ALJ then assessed Plaintiff's RFC, including his mental RFC. (AR 21, 23.)

Plaintiff argues that the ALJ erred by not addressing Plaintiff's ability to: (1) understand, carry out, and remember simple instructions; (2) respond appropriately to supervision, co-workers, and usual work situations; and (3) deal with changes in a routine work setting, as Plaintiff claims is required by Social Security Ruling 85-15.[4] While Social Security Ruling 85-15 does describe these three "basic mental demands of competitive, remunerative, unskilled work," it does not require the ALJ to make specific findings as to each of these categories. *See* Social Security Ruling 85-15, 1985 WL 56857, at \*4 (S.S.A. 1985). As described above, the ALJ made the severity and mental RFC findings required by the regulations and did not err in not making additional findings that were not required.[5]

\*\*\*

Because the ALJ's adverse credibility finding of Plaintiff is not supported by substantial evidence, the ALJ's decision cannot stand. The ALJ's error here goes to the heart of the disability determination and is not harmless. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (internal citations and quotation marks omitted) ("An error is harmless if it is

---

[4] The Commissioner argues that Plaintiff has forfeited this argument as well. While this argument is confusing, Plaintiff has provided analysis for it and the Court will not find it forfeited.
[5] While somewhat unclear, Plaintiff's motion appears to also challenge the ALJ's finding that Plaintiff has only mild limitations in understanding, remembering, or applying information. The Court need not reach this argument in light of the Court's determination that the ALJ improperly rejected Plaintiff's subjective testimony, which included testimony about mental limitations that, if properly credited, could alter the ALJ's findings regarding the severity of Plaintiff's mental limitations on remand.

14

inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned."); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

### F. Remand for Benefits or Further Proceedings

Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for further proceedings. When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal citations omitted). A remand for an award of benefits is proper however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal citations and quotation marks omitted).

Here, the first prong of the test is not satisfied because the record has not been fully developed. There are outstanding issues that must be resolved before a final determination can be made given the Court's conclusion that the ALJ erred with respect to her weighing of Plaintiff's symptom testimony. The second prong of the test has been satisfied, as discussed above, because the ALJ gave legally insufficient reasons for discounting Plaintiff's symptom testimony. The third prong, however, is not satisfied. It is not clear from the record that the ALJ would be required to find Plaintiff disabled were the evidence properly credited. At the hearing, the vocational expert was not asked any hypotheticals that incorporated Plaintiff's improperly discredited symptom testimony regarding his memory problems, difficulty interacting with others, inability to walk, sit,

or stand for extended periods of time, and inability to lift objects over ten pounds. (AR 220-26, 232-36.) Further proceedings are therefore warranted.[6]

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

This Order disposes of Dkt. Nos. 20 and 23.

**IT IS SO ORDERED.**

Dated: June 28, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

[6] Plaintiff argues that the case should be remanded for award of benefits but his argument is conclusory and does not explain why the ALJ would be required to find Plaintiff disabled if his improperly discredited testimony were credited.

16